## In re SPAGNOLETTI.

[Cite as *In re Spagnoletti* (1997), 122 Ohio App.3d 683.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 96–L–162.

Decided Aug. 25, 1997.

*Charles E. Coulson*, Lake County Prosecuting Attorney, and *Taylir K. Linden*, Assistant Prosecuting Attorney, for appellee.

*R. Paul LaPlante*, Lake County Public Defender, and *Joseph P. Szeman*, Assistant Public Defender, for appellant.

WILLIAM M. O'NEILL, Judge.

This is an accelerated calendar case submitted to this court on the briefs of the parties.

On June 14, 1995, appellant, Anthony M. Spagnoletti, then aged seventeen, was picked up at 12:32 a.m. by the Mentor Police for violating the Mentor Curfew Ordinance, which states, in relevant part:

" * * * between the hours of 12:00 o'clock midnight and 5:00 o'clock A.M. local time no child between the ages of 16 and 18 years shall be upon any streets, roads, sidewalks, parks, beaches, parking lots, public or private playgrounds, public or private school grounds, church grounds or recreation areas unless accompanied by a parent, guardian or some responsible person over the age of 21 years of age, or a member of said child's family over 18 years of age."

On July 21, 1995, appellant was charged with a violation of the curfew ordinance. On February 13, 1996, appellant filed a motion to dismiss alleging that Mentor's Curfew Ordinance was unconstitutional. The trial court overruled appellant's motion on July 10, 1996. On August 29, 1996, appellant changed his plea, and he was adjudicated an unruly child by the magistrate. On September 16, 1996, the trial court adopted the magistrate's decision after finding that no objections had been filed. Appellant's disposition was to pay court costs.

Appellant timely filed a notice of appeal with a single assignment of error. Appellant contends that the Mentor Curfew Ordinance is unconstitutional, as it unduly infringes upon a juvenile's constitutionally guaranteed rights, thereby violating the First and Fourteenth Amendments to the United States Constitution and the analogous sections of the Ohio Constitution. We agree.

Juvenile curfew ordinances have been challenged in Ohio relatively infrequently, but the issue has been addressed by numerous federal courts. There is no clear line of case law, however, that establishes which ordinances are constitutional and which are not. The ordinances themselves range from a strict prohibition against juveniles being out in public during certain hours of the night to more lenient ordinances that allow for exceptions or defenses. These exceptions may include being accompanied by an adult or guardian; on an errand at the direction of the minor's parent or guardian; traveling to or from a place of employment; in a motor vehicle involved in interstate travel; involved in an emergency; attending an official school, religious, or civic function or other recreational activity; exercising First Amendment rights such as the free exercise of religion, freedom of speech, and the right of assembly; being on the sidewalk abutting the minor's residence or abutting the residence of a neighbor; or being married. Generally, courts have been more likely to strike down the more restrictive ordinances while

allowing the more lenient ordinances that provide for many exceptions or defenses.

While it is well established that juveniles possess certain rights under the Constitution, *In re Gault* (1967), 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527, 538, it is undisputed that juveniles do not enjoy all of the rights of adults. See *Ginsberg v. New York* (1968), 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (minors under seventeen years old do not have the right to purchase sexually oriented materials); *Prince v. Massachusetts* (1944), 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (affirming state's authority to control child's work practices even where such prohibition interfered with child's desire to disseminate religious materials).

A brief analysis of those cases that deal in a precise manner with the distinction between constitutional and unconstitutional ordinances is in order. In *Johnson v. Opelousas* (1981), 658 F.2d 1065, the Fifth Circuit Court of Appeals reviewed a juvenile curfew ordinance that included only two exceptions to the prohibition: when the minor was accompanied by a parent or responsible adult, and when the minor was engaged in an emergency errand.

Initially, the court stated that a law is void on its face for overbreadth if it "does not aim specifically at evils within the allowable area of [government] control but * * * sweeps within its ambit other activities that in ordinary circumstances constitute an exercise" of protected expressive or associational rights. *Id.*, at 1071, quoting *Thornhill v. Alabama* (1940), 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093, 1100. The court continued by noting that an ordinance is not overbroad "unless 'it is not readily subject to a narrowing construction by the state courts' * * * and its deterrent effect on legitimate first amendment activity is both real and substantial. * * *" (Citations omitted.) *Id.* at 1072.

The court then examined the factors set forth in *Bellotti v. Baird* (1979), 443 U.S. 622, 633–639, 99 S.Ct. 3035, 3042–3046, 61 L.Ed.2d 797, 806–811, concerning when the placement of restrictions on minors that would be unconstitutional if placed on adults is justified. Those factors are " 'the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child-rearing.' " *Opelousas* at 1073, quoting *Bellotti v. Baird* (1979), 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797, 807. Those concerns were determined to be inapplicable in *Opelousas* since (1) there was no issue of *peculiar* vulnerability of minors with regard to attendance or travel to or from religious, school, commercial, and other organized activities, or a minor's being on the sidewalk in front of his house; (2) the associational, commercial, and travel activities prohibited under the ordinance were not deemed to involve "critical decisions" on the part of a

minor; and (3) the ordinance inhibited, rather than promoted, the parental role in child rearing. *Id.* at 1073–1074.

The court held that the curfew ordinance in *Opelousas* was overly broad because it swept within its ambit a number of innocent activities which are constitutionally protected, and the stifling effect on the legitimate activities was overt, real, and substantial. The court further reasoned that the ordinance failed to provide adequate exceptions that would permit a narrowing construction by the court. *Id.* at 1074.

In *Qutb v. Strauss* (1993), 11 F.3d 488, the Fifth Circuit Court examined a Dallas ordinance that contained a number of exceptions, including the minor's being out on an errand for a parent or guardian; in a motor vehicle involved in interstate travel; traveling to or returning from employment; being on a sidewalk abutting the minor's residence, or a neighbor's; attending or traveling to and from a religious, school, or civic activity; or exercising any other First Amendment right. Assuming that the curfew ordinance in *Qutb* impinged upon a fundamental right, the court determined whether the ordinance furthered a compelling state interest, *i.e.*, protecting juveniles from crime on the streets. *Id.* at 492.

The court then analyzed whether the ordinance was narrowly tailored to meet the city's interests, noting that the exceptions represent the "most important consideration in determining whether this ordinance is narrowly tailored." *Id.* at 493–494. The court determined that the Dallas ordinance satisfied strict scrutiny, stating, "By including the defense to a violation of the ordinance, the city has enacted a narrowly drawn ordinance that allows the city to meet its stated goals * * * while respecting the rights of the affected minors." *Id.* at 494.

 The fundamental right involved in a curfew case is the fundamental right to free movement. The United States Supreme Court has recognized the importance of the freedom to move about in this country. In *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110, the Supreme Court struck down a vagrancy ordinance and stated the following, with respect to "wandering" and "strolling":

"The difficulty is that these activities are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. These amenities have dignified the right of dissent and have honored the right to be non-conformists and the right to defy submissiveness. They have encouraged lives of high spirits rather than hushed, suffocating silence." *Id.* at 164, 92 S.Ct. at 844, 31 L.Ed.2d at 117.

In another case decided by the Supreme Court, Justice Douglas stated:

" * * * Freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful—knowing, studying, arguing, exploring, conversing, observing and even thinking. Once the right to travel is curtailed, all other rights suffer, just as when curfew or home detention is placed on a person." *Aptheker v. Secretary of State* (1964), 378 U.S. 500, 520, 84 S.Ct. 1659, 1671, 12 L.Ed.2d 992, 1006 (Douglas, J., concurring).

Courts are split, however, on whether freedom of movement is a fundamental right of a minor. See *Bykofsky v. Borough of Middletown* (M.D.Pa.1975), 401 F.Supp. 1242, which held that freedom of movement is *not* a fundamental right of a minor; *Hutchins v. Dist. of Columbia* (D.D.C.1996), 942 F.Supp. 665, which held that freedom of movement *is* a fundamental right of a minor. The importance of the way the right of freedom of movement is viewed is that it determines whether the "strict scrutiny" or "rational basis" test is applied in determining the constitutionality of the ordinance. This issue has not been directly addressed in Ohio.

■ Even if we assume, however, that Ohio does not view the freedom of movement as a fundamental right of a minor, and the rational-basis test is applied, it is clear that the ordinance at issue is unconstitutional. The Mentor Curfew Ordinance is overly broad and allows for almost no exceptions. The only defenses are that the minor is accompanied by a parent, guardian, or some responsible person over the age of twenty-one years, or a member of the minor's family over the age of eighteen years.

In Ohio there is no case law where an ordinance this broad has been upheld. Far narrower ordinances are routinely struck down.

The state relies on two cases from Ohio, both decided by this court, to support its claim. In both cases, this court upheld the constitutionality of the curfew ordinance. Neither ordinance, however, was as broad as the Mentor ordinance. In *Eastlake v. Ruggiero* (1966), 7 Ohio App.2d 212, 36 O.O.2d 345, 220 N.E.2d 126, the ordinance provided a defense if the minor was with his parent or guardian *or* if he had a "legitimate excuse" for being on the streets or sidewalks during the restricted hours. *In re Osman* (1996), 109 Ohio App.3d 731, 672 N.E.2d 1114, the ordinance provided a defense if the minor was accompanied by an adult *or* if he was on an emergency errand, or legitimate business directed by his parent, guardian, or other adult person having the care and custody of the minor. While not as narrowly drawn as some curfew ordinances, these two ordinances are much less restrictive than the Mentor ordinance.

The innocuous activities that would be prohibited by the Mentor ordinance are too many to list, but it is clear that there is no rational relationship between the ends sought and the means chosen. Accordingly, even under the more lenient rational-basis test, the Mentor Curfew Ordinance is unconstitutional.

Appellant's sole assignment of error is with merit.

The judgment of the trial court is hereby reversed, and judgment is entered in favor of appellant. Costs are assessed to appellee.

*Judgment reversed.*

FORD, P.J., and CHRISTLEY, J., concur.