OPINION
{¶ 1} Appellant, Joshua McElroy, appeals the judgment of the Lake County Court of Common Pleas, Juvenile Division, overruling his objections to the magistrate's decision finding him to be a probation violator. At issue is whether the magistrate's decision providing for a one-day detention if appellant again violated his probation violated his constitutional and statutory rights. For the reasons that follow, we affirm.
 {¶ 2} On January 17, 2007, the Painesville City Schools filed a complaint alleging that appellant, then age 16, was unruly by being habitually disobedient in that, *Page 2 
between September 17, 2006, and December 15, 2006, he refused to subject himself to the reasonable control of his teachers, in violation of R.C.2151.022(A).
 {¶ 3} The complaint specified that on September 17, 2006, appellant was engaged in a "verbal and physical altercation (fighting)," which resulted in his suspension. On September 26, 2006, appellant was truant from class several times, resulting in his suspension. On October 24, 2006, appellant engaged in verbal sexual harassment, again resulting in his suspension. On October 30, 2006, appellant threatened staff and disrupted class, resulting in his suspension. Finally, on December 13, 2006, appellant was insubordinate and was suspended.
 {¶ 4} The matter was heard by the magistrate on March 6, 2007. The magistrate personally addressed appellant and advised him of the nature of the charge, his rights and the consequences of an unruly disposition. These rights were also outlined in a document given to appellant, entitled "Rights in Court," which appellant signed and acknowledged he had read and understood. Appellant was advised that if he was found to be unruly, he "may be placed on probation," and if he did not respond, "the Court may impose any of the above consequences applicable to a delinquent child," including that he "may be placed in our Detention Center for up to ninety (90) days." Both appellant and his mother waived their right to counsel.
 {¶ 5} Appellant knowingly and voluntarily admitted the charge, and the magistrate found him to be unruly. Appellant's mother advised the magistrate:
 {¶ 6} "MRS. CARLTON: Joshua needs serious help.
 {¶ 7} "THE COURT: How do you mean?
 {¶ 8} "MRS. CARLTON: We've had to call the police on him quite a few times at home and they don't do anything. They just come and talk to him and — *Page 3 
 {¶ 9} "THE COURT: They wouldn't — just try to calm the situation down?
 {¶ 10} "MRS. CARLTON: They don't have him arrested, no. * * *
 {¶ 11} "* * *
 {¶ 12} "MRS. CARLTON: He's hit his pregnant sister. He told us he wishes we'd die. He's been in counseling and therapy since he was three. Whatever I'm doing, I'm not doing it right because obviously it's not helping.
 {¶ 13} "He refuses to go to Crossroads, refuses to get help from school. He refuses — he was on medication until May of last year. He refuses to take any more medication."
 {¶ 14} On the magistrate's recommendation, appellant was put on indefinite probation, and was ordered to attend the Saturday work program for five days, with one day suspended if four days were well-served, to attend the probation orientation class, and to obtain a violence risk assessment.
 {¶ 15} Two days later, on March 8, 2007, appellant's probation officer filed a motion to impose the suspended disposition or to impose additional dispositions because on that date appellant allegedly violated his probation by leaving school without permission and his whereabouts were unknown to his mother.
 {¶ 16} The magistrate heard the motion on April 3, 2007. Appellant's mother waived her right to counsel, but appellant was represented by an attorney. Appellant admitted the violation, and, on the magistrate's recommendation, his probation was continued and appellant was ordered to attend the Saturday work program for four additional days. The magistrate also recommended the following disposition:
 {¶ 17} "If the juvenile does not attend school all day, is not properly excused by a doctor or school, or is not accountable for his whereabouts, a warrant shall immediately *Page 4 
be issued and the juvenile held in the Lake County Detention Facility until the next school day, to be released to his mother ½ hour before the start of school."
 {¶ 18} On April 17, 2007, appellant filed "Objections to Magistrate's Decision" concerning the order that he be detained until the next school day if he did not attend school, arguing: (1) the decision violated R.C.2151.354, which provides that a child cannot be sentenced to detention without a further hearing to determine whether he was amenable to other options; (2) the decision violated due process; (3) and the trial court failed to notify appellant that detention time was a possible penalty on the unruly charge or for a probation violation on his unruly adjudication.
 {¶ 19} On June 26, 2007, the trial court overruled appellant's objections. The court found the magistrate's decision was not contrary to law in that he did not sentence appellant to detention, nor did he revoke his probation. The court found the magistrate's recommendation was authorized under R.C. 2151.312(B)(3) and R.C. 2151.30. It is from this order that appellant files the instant appeal.
 {¶ 20} One week after appellant filed his objections, on April 24, 2007, appellant's probation officer filed a second motion to impose the suspended dispositions or to impose additional dispositions on the ground that appellant failed to attend the probation orientation program. On May 1, 2007, appellant admitted the violation, and, on the recommendation of the magistrate, was ordered to attend the Saturday work program for three additional days.
 {¶ 21} On May 8, 2007, appellant's probation officer filed a third motion to impose because on that date, appellant violated the court's order by not attending school all day without a doctor's or school excuse. On May 11, 2007, appellant admitted the violation and was ordered to attend three additional days at the Saturday work program. *Page 5 
 {¶ 22} On May 18, 2007, appellant's probation officer filed a fourth motion to impose because on May 14, 2007, appellant failed to attend school without a doctor's or school excuse. On May 21, 2007, appellant admitted the violation. He was placed on home detention for 30 days with 15 days suspended if he attended school daily.
 {¶ 23} The day after the trial court overruled appellant's objections to the magistrate's April 3, 2007 decision, on June 27, 2007, appellant's probation officer filed a fifth motion to impose, alleging appellant had left home on June 25, 2007, at 3:00 p.m., and did not return until the next day, June 26, 2007, at 6:00 p.m. When his mother attempted to locate appellant, she learned he was not at the home where he was given permission to be. Appellant admitted the violation and was placed on home detention for another 30 days.
 {¶ 24} Appellant appeals the court's June 26, 2007 judgment entry overruling his objections to the magistrate's April 3, 2007 decision, asserting as his sole assignment of error:
 {¶ 25} "THE TRIAL COURT ERRED BY DIPOSING [SIC] THE DELINQUENT CHILD-APPELLANT TO ADDITIONAL DETENTION TIME WITHOUT DUE PROCESS OF LAW."
 {¶ 26} Under this assigned error, appellant raises three issues. He argues: (1) the court violated R.C. 2151.354 by imposing a sentence of detention without holding a further hearing; (2) the court's detention sentence violated due process; and (3) the court failed to inform appellant that detention was a potential penalty of his unruly charge or a possible consequence of violating his probation.
 {¶ 27} First, appellant argues that because R.C. 2151.354 requires a "further hearing" before a disposition of detention may be imposed and because the subject *Page 6 
disposition may result in a one-day detention, the disposition violated R.C. 2151.354 because, under it, appellant could be placed in a detention facility for one day without a further hearing.
 {¶ 28} Appellant's reliance on this court's decision in In reOsman (1996), 109 Ohio App.3d 731 is misplaced. In Osman the referee had found the child to be unruly and sentenced him to five days detention and one year probation. The referee then suspended all five days of the detention. The child appealed, arguing that the trial court erred in upholding the five day disposition because the mandatory statutory hearing required by R.C. 2151.354 had not been provided.
 {¶ 29} The version of R.C. 2151.354 in effect in 1996, whenOsman was decided, provided in pertinent part, as follows:
 {¶ 30} "(A) If the child is adjudicated an unruly child, the court may:
 {¶ 31} "(1) Make any of the dispositions authorized under section2151.353 of the Revised Code [regarding disposition of abused, neglected, or dependent child];
 {¶ 32} "(2) Place the child on probation under any conditions that the court prescribes;
 {¶ 33} "(3) Suspend or revoke the driver's license issued to the child and suspend or revoke the registration of all motor vehicles registered in the name of the child;
 {¶ 34} "(4) If, after making a disposition under division (A)(1), (2), or (3) of this section, the court finds upon further hearing that the child is not amenable to treatment or rehabilitation under that disposition, make a disposition otherwise authorized under divisions (A)(1) to (3) and (A)(6) to (10) of section 2151.355 of the Revised Code." *Page 7 
 {¶ 35} The reference to R.C. 2151.355 in paragraph (4) allows for confinement of the child.
 {¶ 36} In Osman this court held:
 {¶ 37} "The State of Ohio responds by arguing that since all five days of detention were suspended, the trial court did not actually impose a period of detention. This argument is without merit. While the end result may possibly be the same, i.e. appellant spends no time in detention, the result will be different should appellant violate the terms of his probation. Accordingly, this matter must be remanded to the trial court to enter a disposition in accordance with * * * R.C. 2151.354(A)." Id. at 737.
 {¶ 38} Since this court's decision in Osman, R.C. 2151.354 has been revised to provide, as follows:
 {¶ 39} "(A) If the child is adjudicated an unruly child, the court may:
 {¶ 40} "(1) Make any of the dispositions authorized under section2151.353 of the Revised Code [regarding disposition of abused, neglected, or dependent child];
 {¶ 41} "(2) Place the child on community control under any sanctions, services, and conditions that the court prescribes, as described in division (A)(4) of section 2152.19 of the Revised Code, provided that, if the court imposes a period of community service upon the child, the period of community service shall not exceed one hundred seventy-five hours;
 {¶ 42} "(3) Suspend the driver's license * * * issued to the child for a period of time prescribed by the court and suspend the registration of all motor vehicles registered in the name of the child for a period of time prescribed by the court. * * *;
 {¶ 43} "(4) Commit the child to the temporary or permanent custody of the court; *Page 8 
 {¶ 44} "(5) Make any further disposition the court finds proper that is consistent with sections 2151.312 and 2151.56 to 2151.61 of the Revised Code;
 {¶ 45} (6) If, after making a disposition under division (A)(1), (2), or (3) of this section, the court finds upon further hearing that the child is not amenable to treatment or rehabilitation under that disposition, make a disposition otherwise authorized under divisions (A)(1), (4), (5), and (8) of section 2152.19 of the Revised Code that is consistent with sections 2151.312 and 2151.56 to 2151.61 of the Revised Code.
 {¶ 46} R.C. 2151.312(B), effective January 1, 2002, provides:
 {¶ 47} "(2) Except as provided under sections 2151.26 to 2151.61 of the Revised Code and division (B)(3) of this section, a child alleged to be or adjudicated an unruly child may not be held for more than twenty-four hours in a detention facility. * * *
 {¶ 48} "(3) A child who is alleged to be or adjudicated an unruly child and who is taken into custody on a Saturday, Sunday, or legal holiday, as listed in section 1.14 of the Revised Code, may be held in a detention facility until the next succeeding day that is not a Saturday, Sunday, or legal holiday."
 {¶ 49} Thus, pursuant to R.C. 2151.312, a child alleged or adjudicated to be unruly may be held in a detention facility for up to twenty-four hours or, if taken into custody on a Saturday, Sunday, or legal holiday, until the next day that is not a Saturday, Sunday, or legal holiday. Such detention does not require a further hearing. The "further hearing" is only required when the court makes a disposition under R.C.2151.354(A)(1), (2), or (3).
 {¶ 50} The detention sentence here amounted to a "further disposition * * * consistent with [R.C.] 2151.312," pursuant to R.C. 2151.354(A)(5). As such, a "further hearing" was not required. *Page 9 
 {¶ 51} Next, appellant argues that the court's disposition violated his due process rights pursuant to In re Gault (1967), 387 U.S. 1. In that case the Supreme Court held that at the adjudicatory stage of the juvenile process when the proceedings may result in incarceration in an institution of confinement, the United States Constitution requires due process be accorded to the child, i.e., adequate notice of the issues which must be met, notice of the right to counsel, and a hearing at which the child has a right to confront and cross-examine witnesses and where the privilege against self-incrimination is applicable.
 {¶ 52} Initially, we note that the full range of due process rights was accorded to appellant prior to the entry of his admission to the unruly charge. He was advised of the nature of the charge; his right to counsel; each of his trial rights, including his right to a trial on the charge where he is presumed innocent and the state has the burden to prove his guilt beyond a reasonable doubt, his right to cross-examine the state's witnesses and to present witnesses on his own behalf, his right to testify, his privilege against self-incrimination, and his right to appeal; and the consequences of his failure to follow the terms of probation, including possible detention.
 {¶ 53} We observe that the magistrate's disposition, as subsequently approved by the court, provided that a warrant would issue and appellant would be held in the detention center only if he did not attend school all day without a medical or school excuse or if he could not account for his whereabouts. Appellant was thus given advance notice of the circumstances in which a warrant would issue.
 {¶ 54} In addition, the order impliedly provided that if appellant had a proper medical or school excuse or if he could account for his whereabouts, a warrant would not issue and/or he would not be held the one day in the detention center. The order by *Page 10 
its terms does not provide any limits to the methods by which the child or parent could bring such excuse to the court's attention. It thus provided an opportunity for the child or his parent to demonstrate the existence of such excuse. The hearing requirement of due process was therefore also satisfied by the court's order. We therefore hold that the court's order did not violate appellant's right to due process.
 {¶ 55} Finally, appellant argues that because the trial court did not warn him that detention was a possible consequence of his unruly charge or the violation of his probation at his March 6, 2007 disposition hearing, his sentence of detention upon violation of probation was "not proper."
 {¶ 56} However, on March 6, 2007, prior to the hearing on that date, appellant was advised by the court in writing that if he was "found to be an unruly child," he "may be placed on probation," and if he did "not respond to the above treatment, "the court may impose any of the above consequences applicable to a delinquent child." The listed consequences include placement "in our Detention Center for up to 90 days." As a result, appellant is incorrect when he argues he was not warned that detention was a possible consequence of an unruly charge.
 {¶ 57} Appellant essentially argues he was denied due process because the court failed to inform him of the consequences of the unruly hearing. He cites In re Kimble (1996), 114 Ohio App.3d 136 in support. In that case the child was charged with being unruly due to his habitual truancy. Following the hearing, the court found the child to be unruly and also revoked his parole, although no parole violation complaint had been filed against him. Consequently, the juvenile court had not given him advance notice that the hearing could also result in the violation of his parole. *Page 11 
 {¶ 58} The Third Appellate District held that because the child never received notice concerning the issue of a possible parole violation until after his parole had been revoked, the juvenile court had improperly revoked the child's parole pursuant to Morrissey v.Brewer (1972), 408 U.S. 471.
 {¶ 59} The holding in Kimble is inapposite because, here, the court had advised appellant prior to the entry of his admission to the unruly charge on March 6, 2007, of the possibility of detention if he failed to follow the terms of any probation, and further the state had filed a motion to impose the original disposition due to his violation of the terms of his probation. Thus, unlike the defendant in Kimble, appellant had advance notice prior to the probation violation hearing on April 3, 2007, that detention was a possible consequence of the violation of the terms of his probation.
 {¶ 60} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas, Juvenile Division is affirmed.
DIANE V. GRENDELL, P.J., concurs,
COLLEEN MARY O'TOOLE, J., concurs with Concurring Opinion.